**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**JULIE BRITTINGHAM, et al.,**

       **Plaintiffs,**

-vs-                                                            **Case No.  3-:02-CV-283**

**JANE FARLEY, M.D., et al.,**

                                                                                   **Judge Thomas M. Rose**

       **Defendants.**

---

**ENTRY AND ORDER OVERRULING PLAINTIFFS' MOTION FOR RECONSIDERATION AND FOR ORAL ARGUMENT (Doc. #193)**

---

Now before the Court is Plaintiff Julie Brittingham's ("Brittingham's") Motion for Reconsideration of this Court's Order (the "Order") granting General Motors' ("GM's") Motion for Summary Judgment. (Doc. #193.) The Order (doc. #129) was entered on June 28, 2004 and Brittingham's Motion for Reconsideration was filed on February 10, 2005.

Brittingham now seeks reconsideration of this Court's determination, as evidenced by the Order, that GM did not have a legal duty to her. Brittingham also seeks oral argument on this Motion for Reconsideration.

Brittingham fashions her Motion for Reconsideration as a motion to reconsider an interlocutory order granting summary judgment. On this, Brittingham is correct. The Order is interlocutory because final judgment has not yet been entered on the remaining issues by the trial court. The trial of the issues and defendants that remained after the grant of summary judgment to GM resulted in a hung jury and has been rescheduled.

"The Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders." "However, district courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 2004 WL 237651, 89 Fed.Appx. 949, 959 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 152 (2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F.Supp. 955, 965 (N.D.Ohio 1998)). A manifest injustice is an error that is direct, obvious and observable. *Black's Law Dictionary* (7th ed. 2004).

Here, Brittingham offers no new evidence, identifies no change in controlling law and identifies no direct, obvious and observable error. Brittingham's reason for reconsideration is that "a careful reexamination of this Court's previous ruling is consistent with the quest for justice to all parties in this case." Specifically, Brittingham again argues that, under Ohio law, a duty is created by the adoption of policies whose purpose was to protect Brittingham and others in her position and that this issue was not mentioned or resolved by the Order.

The Court determined, as set forth in the Order, that the relationship between Brittingham and GM was commercial and not medical and GM did not have a duty to disclose the results of Brittingham's preemployment physical to Brittingham based upon Ohio law. Brittingham has specifically and voluntarily dismissed any claims arising out of her employment at GM.

The Order analyzed the Ohio cases that Brittingham argued created a duty for GM. One was based upon the duty of a physician and not the duty of a company with a commercial

relationship with the plaintiff. The other was based upon a duty arising from a trailer park operator's control of the premises and did not relate to the duty of a company with a commercial relationship with a prospective employee. The remaining cases cited by Brittingham were not Ohio cases and could not, therefore, create a duty under Ohio law.

At the time, Brittingham did not show, as a matter of Ohio law, that GM owed her a duty to disclose the results of her preemployment physical outside of the context of an employee-employer relationship. Brittingham has not identified any new evidence or new law. However, consistent with Brittingham's "quest for justice," the rearguments presented in her Motion for Reconsideration will be examined.

## REARGUMENTS

Brittingham again argues GM had a duty to report the results of Brittingham's pre-employment physical to her prior to her employment at GM. Brittingham's employment at GM began two weeks after her preemployment physical and Brittingham has specifically and voluntarily dismissed any claims arising out of her employment at GM.

GM responds with evidence that it did disclose Brittingham's test results to her. Brittingham signed the results of her test. Yet, Brittingham herself characterizes her claim as involving test results that were not properly explained to her. (Doc. #108, Pls. Reply To Pls. MSJ at 5.) However, Brittingham testifies that she went to the preemployment physical examination solely for the purpose of seeking employment at GM. (Brittingham Aff. ¶6.) She did not undergo the physical exam to obtain any medical diagnosis, care or treatment. (Id.) Brittingham has further indicated that her claim against GM does not arise from medical diagnosis, care or treatment. (Doc. #100, Pls. Memo Opp. at 5.) Finally, Brittingham's claims against Dr. Stull,

-3-

who administered the preemployment physical, have been dismissed as a result of Brittingham's failure to file suit within the statute of limitations for medical claims. (Doc. #67.) Therefore, Brittingham is left with attempting to show that GM, not as an employer or a physician, but as a potential employer with a commercial and not medical relationship with Brittingham owed Brittingham a duty under Ohio law to "properly" explain the results of Brittingham's lung function test to her.

Brittingham attempts to find such a duty in the laws of Ohio and of other states. Since her claims were brought pursuant to Ohio law, the Court confines itself to seeking such a duty in the laws of Ohio and ignores the law of other states.

Brittingham argues that the duty that GM owed to her in this case is created by Ohio law and arises out of GM's corporate policy allegedly requiring an individual who has abnormal lung function test results to be referred "to a qualified physician or as company policy dictates." (Doc. #105, Ex. E (Delphi 00076).) In the Order, this Court found no such duty in Ohio law and declined to create such a duty based upon the reasoning supplied by Brittingham.  Brittingham again presents the same arguments and no new law in support.

Brittingham first cites *Seley v. G.D. Searle & Co.* in which Brittingham alleges that the Supreme Court of Ohio cited the "voluntary duty" doctrine which specifies that one who gratuitously undertakes a voluntary act assumes the duty to complete it with the exercise of due care under the circumstances. 423 N.E.2d 831, 839 (Ohio 1981). However the Ohio Supreme Court in *Seley* specifically held that the voluntary duty doctrine <u>does</u> <u>not</u> apply to cases based upon failure to provide adequate warnings with prescription drugs. *Id.*  More importantly, the Ohio Supreme Court in *Seley* did not opine on whether the "voluntary duty" doctrine applies to

-4-

cases such as this and this Court will not make new Ohio law by extending the "voluntary duty" doctrine to the facts of this case.

Brittingham then again cites *Meinze v. Holmes*, 532 N.E.2d 170 (Ohio Ct. App.1987), an Ohio Appeals Court case, for the proposition that GM has a duty in this case to "transmit" important information learned during a pre-employment physical, even in the absence of any policy. However, this Court has already determined that, "the *Meinze* Court's finding was based upon a physician's duty to disclose and not an employer's duty to disclose and was limited to the specific circumstances of the case at hand." (Doc. #129 at 15.)

In response to this Court's previous finding, Brittingham now argues that, "many appellate opinions limit their findings to the facts of specific cases" and "this appellate practice does not negate the underlying reasons behind the *Meinze* opinion - that it was important to have information discovered in a pre-employment examination, which was unknown to the examinee, communicated to him." The only "underlying reasoning" identified in the *Meinze* opinion is in regard to a physician-patient relationship and the case is about the relationship between an insured and a disability insurer. Nothing is said regarding the commercial relationship between a potential employer and a potential employee. Again, this Court declines Brittingham's invitation to extend Ohio law beyond its current borders.

As a follow up to her arguments regarding *Meinze*, Brittingham, in her Reply Memorandum, "discovered" the "recent" year 2000 case of *Huffman v. Smithkline Beecham Clinical Laboratories, Inc.*, 111 F.Supp.2d 921 (N.D.Ohio 2000). As Brittingham notes, *Huffman* involved a claim that an employer and a testing facility were negligent in providing and evaluating blood test results taken as part of a wellness program.

Huffman involved an employer asserting immunity under the Ohio Workers Compensation Act against an employee who had participated in the employer's medical care program. The issue was whether the employer acted in a dual capacity and assumed a second status of personal medical care provider. However, as previously indicated, Brittingham has forgone any claims, dual capacity or otherwise, against GM as her employer and Brittingham has said that she is not seeking medical claims against GM. Therefore, since *Huffman* discusses the duty of an employer acting in a dual capacity as a medical provider, it does not apply here.

Brittingham is also critical of this Court's Opinion for failing to discuss or consider evidence from Dr. Linz and Dr. Blickenstaff that there are actual industry standards under which GM had a duty to communicate test results to Brittingham. However, as Brittingham says in the very next sentence in her Memorandum, the question of duty is a question of law for the Court and is not a matter for "expert opinion." *Mussivand v. David*, 544 N.E.2d 265, 269 (Ohio 1989). Further, this Court will continue to decline to make Ohio law, even based upon expert opinions, and Brittingham has yet to cite Ohio law creating a duty in the circumstances of this case.

Brittingham is next critical of the adoption of *Eaton v. Continental General Insurance Company*, 147 F.Supp.2d 829, 833 (N.D.Ohio 2001), *aff'd*, 59 Fed.Appx. 719, 2003 WL 857330 (6th Cir. 2003) as the basis for this Court's finding that Brittingham's relationship with GM was "commercial" and "not medical" and that no duty is created when the relationship is commercial and not medical. This is somewhat disingenuous when it was Brittingham that first argued for purposes of the applicable statute of limitations that her claims were not medical claims and were based upon GM's "administrative failure to communicate and enforce its own policies." The Court agreed with Brittingham, for a different reason, that "Brittingham's claims against

GM are, therefore, not medical claims and are subject to the two-year statue of limitations…" (Doc. #129 at 11.)

Brittingham now argues that this Court should not have applied *Eaton* because, "absent from *Eaton* were any facts which indicated that there were any policies adopted by defendants which were intended to protect the plaintiff or that defendant advised the plaintiff that he had passed the test or was ok." Brittingham is again disingenuous because also absent from Eaton were any facts indicating that there were no policies adopted by defendants intended to protect the plaintiff or requiring that the plaintiff be advised of the test results. Whether or not policies were in place, *Eaton* defined a commercial relationship and found that a duty to notify does not arise from a commercial relationship.

Brittingham next criticizes this Court's "unnecessarily harsh and limited view" of *Bundy v. Sky Meadows Trailer Park*, 1989 WL 125379 (Ohio Ct. App. 1989). However, as already determined, in *Bundy*, an Ohio appeals court found that a trailer park operator has a duty to enforce the rules and regulations of the trailer park. *Id.* at *2. "This duty arose from the trailer park operator's control of the premises through its ability to promulgate rules for common premises of the park pursuant to an Ohio statute." (Doc. #129 at 15.)

Therefore, *Bundy* involves duties owed to business invitees by trailer park owners who have knowledge of potential dangers on the premises and has nothing to do with duties owed to potential employees by potential employers. Brittingham argues that this view is harsh and limited because *Bundy* is based upon the broad concept of the creation of a duty by the enactment of rules where a duty may not have previously existed. However, Brittingham cites to no specific language in *Bundy* or elsewhere where an Ohio court has legitimized the "broad

concept" that a duty is created by the enactment of rules. And, again, this Court declines to create new Ohio law regarding the duty that a prospective employer may have to a prospective employee.

Having reargued her positions regarding GM's duty, Brittingham finally reargues that her concealment claims against GM should not have been dismissed. However, Brittingham's Intentional Misconduct, Breach of Fiduciary Duty and Fraudulent Concealment claims against GM were dismissed because each required that GM have a duty to Brittingham in one form or another. Since Brittingham has failed, again, to show that GM has a duty to her, each of these claims must remain dismissed.

Brittingham now argues that, based upon the Ohio Appeals Court's holding in *Spitler v. Select Tool and Die Company*, Case No. CA-12791, 1992 WL 120567 (Ohio Ct. App. June 2, 1992), GM owed a duty to Brittingham to respond to her questions with accurate information. In *Spitler*, the Court found that Section 311 of the *Restatement of Torts, 2nd* gives rise to an actionable duty when one person undertakes to respond to another's questions under circumstances in which it should be assumed that the latter is likely to be reasonably relying upon those answers for the protection of himself or others. *Id.* at *5. However, this argument is misplaced because, it was Dr. Stull who administered the physical and presented the results and there is no evidence that Brittingham asked any questions, let alone any questions to GM. Finally, Mr. Brittingham's Loss of Consortium claim again fails because the derivative tort claims fail.

Although Brittingham is not legally entitled to reargue that GM has a duty to her, she has been permitted, in the interest of justice, to do so and has done so unsuccessfully. A thorough

review of Brittingham's prior arguments, and some additional arguments, regarding GM's alleged duty results in the same conclusion as reached in the Order. Under Ohio law, GM, as a prospective employer with a commercial, not medical, relationship owes no duty to Brittingham as a prospective employee. Brittingham's Motion To Reconsider is OVERRULED.

Brittingham also seeks oral argument on her Motion To Reconsider. Her reason is that oral argument will assist the Court in reviewing and understanding the positions of the parties relative to the applicability of Ohio law and that oral argument will permit a richer and more productive interactive analysis of plaintiffs' creation of duty assertions and defendant's response to them. However, the Motion To Reconsider was fully briefed by both Parities involved and the Court has been able to understand, but not necessarily agree with, the positions of the Parties. Therefore, Brittinghams' Motion for Oral Argument is not well founded and is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio, this Ninth day of August, 2005.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record